Frank **CAPARELLI** et al., Plaintiffs,

and

**Robert L. Jones** et al., and **James J. Hayes** et al., Plaintiffs-Intervenors,

v.

The **PROCEEDS OF FREIGHT**, Pan American Tankers Corporation and Whitehall Navigation Corporation, Pursuant to Charter Parties with the Government of South Vietnam for Transport of Cargo Aboard the S. S. **CORTLAND**, S. S. **BOWLING GREEN** and S. S. **WHITEHALL**, Defendants.

**NATIONAL BANK OF NORTH AMERICA**, Defendant and Third-Party Plaintiff,

v.

**UNITED STATES** of America, Third-Party Defendant.

No. 71 Civ. 4454.

United States District Court,
S. D. New York.

Nov. 18, 1974.

See also D.C., 390 F.Supp. 1345.

Schulman, Abarbanel & Schlesinger, New York City, for plaintiffs; David Jaffe, New York City, of counsel.

Zwerling & Zwerling, New York City, for plaintiffs-intervenors Jones, and others; Martin Kent, New York City, of counsel.

Markowitz & Glanstein, New York City for plaintiffs-intervenors Hayes, and others; Joel C. Glanstein, New York City, of counsel.

Lord, Day & Lord, New York City, for defendant and third-party plaintiff National Bank of North America; Woodson D. Scott, New York City, of counsel.

Cole & Deitz, New York City, Gen. Counsel for National Bank of North America; Edward N. Meyer, New York City, of counsel.

Paul J. Curran, U. S. Atty., S. D. New York, for the Government; Gerald A. Rosenberg, New York City, of counsel.

## OPINION

BONSAL, District Judge.

This is an action in admiralty for recovery of mariners' wages. Plaintiffs

are unlicensed seamen who in 1967 and 1968 allegedly were employed aboard the S.S. BOWLING GREEN, the S.S. CORTLAND, and the S.S. WHITEHALL, Plaintiffs-intervenors ("intervenors"), the Trustees of the Masters, Mates & Pilots Pension & Welfare Plan and the Trustees of the Marine Engineers Beneficial Association Health & Welfare Plan, are the assignees of the wage claims of the licensed deck officers and licensed marine engineers, respectively, who in 1967 and 1968 allegedly were employed aboard the same three vessels. Defendant and third-party plaintiff National Bank of North America ("National") is the holder of preferred mortgages on the S.S. BOWLING GREEN, S.S. CORTLAND and S.S. WHITEHALL.

Plaintiffs, intervenors, National, and third-party defendant United States of America each move for summary judgment. In addition, plaintiffs and intervenors move for an order pursuant to F.R.Civ.P. 36 "that the matters set forth in the Requests for Admissions of plaintiffs and plaintiffs-intervenors are admitted," and for an order pursuant to F.R.Civ.P. 36, 37, and 56 "that sanctions be imposed upon defendant National Bank of North America including, without limitation, motion costs and attorneys' fees." Finally, plaintiffs move for an order granting them leave to amend the complaint.

The facts involved in this action are set forth in this Court's Opinion filed March 25, 1974, 390 F.Supp. 1345, and need not be repeated here. In that Opinion, this Court denied a prior motion by plaintiffs and intervenors for summary judgment, but held that a mariner could proceed against those monies then in possession of National representing freight, demurrage, and "lay-up expense" to enforce his lien for wages. The Court at that time requested suggestions from counsel as to how the claims to this fund could be heard and disposed of most expeditiously. No order has yet been entered on the Opinion.

At a conference on April 17, 1974, at which counsel for all parties were present, counsel for plaintiffs and intervenors indicated the availability of certain documentary evidence consisting of wage vouchers, assignments of wage claims, business records of union trust funds, and payroll records of Pan American Tankers Corporation ("Pan American") and Whitehall Navigation Corporation ("Whitehall") which in their opinion established the validity and extent of the alleged wage claims. It was agreed that within thirty days counsel for all parties would meet in the office of Assistant United States Attorney Rosenberg to inspect the originals of certain of these documents in order to ascertain their authenticity and to determine whether any factual issues remained for trial. The Court was subsequently informed that counsel met to inspect documents on April 25, 1974.

On or about May 9–13, 1974, counsel for plaintiffs and intervenors served on counsel for all parties and filed with the Court requests for the admission of certain matters pursuant to F.R.Civ.P. 36, including the authenticity of the payroll records of Pan American and Whitehall and the wage vouchers. On or about June 10, 1974, National served and filed objections to these requests for admissions.

A second conference between the Court and counsel for all parties was held on June 21, 1974. At that time counsel for plaintiffs and intervenors informed the Court of their intention to move for summary judgment on the basis of all papers on file and on the basis of their requests for admissions and National's objections. Oral argument on the motions presently pending was heard on September 3, 1974.

Pursuant to Order of this Court filed September 17, 1974, National was directed to deposit in the Court Registry the sum of $578,099.38, representing the res in this suit plus interest, because it appeared that National had taken no action to segregate this fund as directed

in the Court's Opinion of March 25, 1974. The Clerk of the Court thereafter deposited these monies in an interest bearing account in the Bank of New York, 48 Wall Street, New York, New York.

*Plaintiffs' Motion for Leave to Amend the Complaint*

Plaintiffs seek to amend the complaint to add as plaintiffs Joseph DiGrazia and Helen Theresa Devalcourt Burch, as Administratrix of the Estate of Richard A. Burch, and to allege the claim of DiGrazia as $3,498.07 for net wages, $299.-45 for social security tax and $1,007.80 for income tax withholding, and the claim of Burch as $622.84 for net wages, $193.06 for social security tax and $460.-00 for income tax withholding. National opposes plaintiffs' motion to amend the complaint on the grounds that the motion is "unreasonable and unfair to the other parties," that there is "no need for an amendment of this type," and that any claims of the parties sought to be added are barred by the statute of limitations.

According to the affidavit of David Jaffe, Esq., submitted in support of plaintiffs' motion to amend the complaint, the Seafarer's International Union did not originally make a claim for DiGrazia because immediately upon repatriation he shipped out on another vessel without contacting the union. No claim was originally made for Burch because he died in Saigon on or about June 6, 1968 and therefore was not listed among those who returned to the United States with the crew of the S.S. WHITEHALL. Jaffe's affidavit also indicates that counsel for intervenors and for the United States have no objection to the granting of the motion. Moreover, since the claims of plaintiffs and intervenors are already considerably in excess of the fund available to satisfy those claims, it would not appear that National will be prejudiced by granting of plaintiffs' motion to amend the complaint.

Finally, National asserts, without citing authority, that the applicable statute of limitations is six years and therefore any claims of the two parties sought to be added are time-barred. However, in view of the reasons for failure to file the claims originally, the preferred position occupied in admiralty law by mariners with claims for wages, the lack of objection of the other claimants to the fund, except National, the apparent absence of prejudice to National, the failure of National to show that the applicable statute of limitations is six years, and the fact that the fund did not come into existence until sometime in the latter part of 1969 or early 1970, plaintiffs' motion for leave to amend the complaint is granted. F.R.Civ.P. 15(a).

*Motions of Plaintiffs and Intervenors for Summary Judgment*

In denying the prior motions of plaintiffs and intervenors for summary judgment, the Court stated:

> "The pleadings have raised factual issues including but not necessarily limited to whether plaintiffs and the assignors of plaintiffs-intervenors were employed on the S.S. BOWLING GREEN, S.S. CORTLAND or S.S. WHITEHALL; whether they performed all services required of them; whether they have demanded and been refused their wages; and the amount of wages, if any, due them."

In addition to the papers on file at the time of their previous motion for summary judgment, plaintiffs and intervenors offer in support of their present motions for summary judgment copies of purported payroll records of Pan American and Whitehall, their requests for admissions, and National's objections.

Standing alone, the purported payroll records have not been sufficiently authenticated to qualify them as full exhibits and therefore could not support the entry of summary judgment in favor of plaintiffs and intervenors. *See*

Oceanic Trading Corp. v. Vessel Diana, 423 F.2d 1, 4 (2d Cir. 1970). The supplemental affidavit of Assistant United States Attorney Rosenberg has bearing primarily on the chain of custody of the purported payroll records and not on their authenticity.

In an attempt to authenticate the purported payroll records and the wage vouchers submitted previously, plaintiffs and intervenors served on National requests for admissions. National served and filed objections to these requests for admissions on the grounds that the items contained therein are "impertinent and/or relating to matters which present genuine issues for trial," that the requests for admissions were served "without reasonable cause or justification as a means of undue harassment and for no proper purpose within the purview of FRCP 36," and that National would not be able to admit or deny the items contained in the requests for admissions "because these items relate not to facts or documents of which National Bank of North America would have knowledge, but rather facts and documents of which others, including plaintiffs, would have knowledge."

F.R.Civ.P. 36(a) provides in relevant part:

"A party may serve upon any other party a written request for the admission . . . of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request.
. . .

" . . . A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; he may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why he cannot admit or deny it.

" . . . Unless the court determines that an objection is justified, it shall order that an answer be served. . . . "

The Court has reviewed the requests for admissions served and filed by plaintiffs and intervenors and the objections served and filed by National, and finds that National's objections are not justified. All of the matters set forth in the requests are "relevant to the subject matter involved in the pending action," within the meaning of F.R. Civ.P. 26(b)(1), and no claim of privilege has been asserted by National. That some of these matters may present a genuine issue for trial is expressly excluded by F.R.Civ.P. 36(a) as a basis for objection. National's contention that the requests for admissions were served "without reasonable cause or justification as a means of undue harassment and for no proper purpose within the purview of FRCP 36" is without merit. Plaintiffs and intervenors have served and filed requests for admissions primarily to establish the genuineness of certain documents which they contend prove their claims, a purpose expressly set forth in F.R.Civ.P. 36(a). Finally, if National feels it lacks sufficient knowledge to admit or deny the matters set forth in the requests for admissions, it may serve and file an appropriate answer to that effect pursuant to F.R.Civ. P. 36, subject of course to the provisions of F.R.Civ.P. 37(c). Accordingly, National is ordered to serve and file answers to the requests of plaintiffs and intervenors for admissions on or before December 2, 1974. Should any genuine issues of fact remain after National serves and files its answers, trial will be scheduled as soon thereafter as practicable. In view of this disposition, the motions of plaintiffs and intervenors for summary judgment are denied.

*Motions of Plaintiffs and Intervenors for Sanctions*

The attorneys for National have been unnecessarily negative in their approach to this litigation. They have confused and delayed the progress of the action and have put the other parties to unnec-

essary burden and expense. The waste of time has been prodigious, and the Court sympathizes with the reasons which motivate plaintiffs and intervenors in seeking sanctions against National, including motion costs and attorneys' fees pursuant to F.R.Civ.P. 37(a)(4). No doubt National is in disagreement with this Court's Opinion of March 25, 1974 as to the validity of the liens, and the Court would have certified these issues to the Court of Appeals pursuant to 28 U.S.C. § 1292(b) had National so requested. No request was made, so that now it is essential that the matter proceed to final decision in this Court, subject to the right of appeal by any party so advised.

■ The Court is not prepared to impose sanctions at this time, believing that the distinguished law firm which represents National will find it in National's best interest to cooperate with the other parties and the Court to the end that the issues will be finally resolved. Should this not eventuate, the Court will take such measures as may be appropriate to bring the matter to a speedy conclusion. Accordingly, the motions of plaintiffs and intervenors for sanctions, including motion costs and attorneys' fees, are denied without prejudice to renewal at a later date.

*National's Motion for Summary Judgment*

National moves for summary judgment on the grounds that there is no res before the Court available to plaintiffs, intervenors, or the United States and that the preferred mortgages and credit documents give National priority over any claims of plaintiffs, intervenors, or the United States.

■ In its Opinion filed March 25, 1974, 390 F.Supp. 1345, this Court held that a mariner could proceed against those monies then in possession of National representing freight, demurrage, and "lay-up expense" to enforce his lien for wages. Therefore there is a res before the Court available for the satisfaction of wage claims.

National does not appear to dispute that where a lien for wages exists it has priority over a preferred mortgage lien. *See* 46 U.S.C. § 953. However, the thrust of National's argument seems to be that upon assignment, a claim for wages loses its character as such and the lien which secures it no longer has priority over the lien of a preferred mortgage. Therefore, insofar as plaintiffs, intervenors and the United States are assignees of wage claims, their claims to the fund are subordinate to National's.

■ Contrary to the assertions of National, a mariner may assign his claim for wages and the lien which secures it, and in the absence of fraud or overreaching on the part of the assignee, the lien will be enforced in admiralty at the suit of the assignee. The President Arthur, 25 F.2d 999 (S.D.N.Y.1928); The Bethlehem, 286 F. 400, 402 (E.D. Pa.1923). Therefore, insofar as the mariners here involved have assigned their claims for wages, the assignees may enforce the liens which secure them, and the liens retain their priority over preferred mortgage liens.

■ With respect to the claims of the United States, the Court of Appeals for the Fourth Circuit has held that once the wage has been set aside for each mariner out of the fund from which it is payable, the Government is by law entitled to that portion of the wage allocable to taxes. Marine Midland Trust Co. v. United States, 299 F.2d 724 (4th Cir. 1962), affirming P. C. Pfeiffer Co. v. The Pacific Star, 183 F.Supp. 932 (E. D.Va.1960). Finding that taxes comprised a part of the wages, the Court pointed out that:

"[t]he Government was gathering of the seamen and of no one else: it partook only of the mariners' portion. The other demandants, for whom the ship was a lienee too, cannot complain of a lawful take from another's entitlement, no matter the taker." 299 F.2d at 725

The case of National Bank of North America v. S. S. Oceanic Ondine, 335 F.

Supp. 71 (S.D.Tex.1971), aff'd per curiam, 452 F.2d 1014 (5th Cir. 1972), upon which National relies, is not to the contrary. The Court in that case expressly indicated that:

"[t]he propriety of the Pfeiffer procedure was never presented for consideration in the instant case because the wages were never paid from the registry, the claim for same having been dismissed." 335 F.Supp. at 71 n. 1

The Court then went on to hold that where no monies are set aside for payment of mariners' wages, the Government's claim is to be treated solely as one for taxes and therefore subordinate to the claims of the holders of preferred mortgage liens. However, assuming in the present case that plaintiffs and intervenors are successful in proving the wage claims involved, the United States would, upon the setting aside of monies to satisfy these claims, be entitled by law to that portion of the wages allocable to taxes. Marine Midland Trust Co. v. United States, *supra*. Accordingly, National's motion for summary judgment is in all respects denied.

*Motion of the United States for Summary Judgment*

The claims of the United States are dependent upon proof of the wage claims asserted by plaintiffs and intervenors. Since the motions of plaintiffs and intervenors for summary judgment have been denied, the motion of the United States for summary judgment must also be denied.

To summarize, plaintiff's motion for leave to amend the complaint is granted. The motions of all parties for summary judgment are denied. National is ordered to serve and file answers to the requests for admissions served and filed by plaintiffs and intervenors on or before December 2, 1974. The motions of plaintiffs and intervenors for sanctions, including motion costs and attorneys' fees, are denied without prejudice to renewal at a later date.

Settle order on notice.